ELEANOR H. P. HAPGOOD

vs.

BARBARA RAHM, d.b.a.
JOHN, HAIRDRESSER AND JOHN B. RAHM

Court of Common Pleas    Hartford County    File #36781

Present:   Hon. ABRAHAM S. BORDON, Judge.

Shipman & Goodwin,        Attorneys for the Plaintiff.

Frank Covello,        Attorney for the Defendant.

**MEMORANDUM FILED JANUARY 28, 1938.**

BORDON, J. The trial of this case disclosed two note-worthy facts, first, that there is no more agreement among hairdressing experts than among experts in other professions, and, second, that a permanent wave is not always, necessarily, permanent.

The plaintiff seeks damages for injury to her hair caused by the negligent and unskillful administration of a permanent wave. The negligence, it is claimed, is in two parts, first, in the manner and method of treatment, and second, in giving her a second permanent too soon after the first, rendering her hair unnaturally dry and dead with a tendency to break off, remaining straight and unwaved and becoming so unsightly as to cause the plaintiff great mortification and embarrassment whenever she appeared in public. She further claims that the condition caused by this negligence necessitated hair and scalp treatments.

The plaintiff is a young woman who devotes a good deal of time to public and private social and social welfare activities, requiring her to appear in public frequently. As is natural with most women, she gives serious thought to her personal appearance, with better than average results. During the past fifteen years she has been a frequent attendant at hairdressing establishments in Hartford and West Hartford for the purpose of obtaining the usual and varied services rendered by them. Periodically she would be given haircuts, hot oil shampoos, tonic applications, plain shampoos, finger waves and permanents. She usually selected reputable establishments in order to insure the most skillful service obtainable in that field.

During the past three or four years she has been a patron at the defendant's salon, and has apparently received satisfactory service; at least nothing in the evidence points to the contrary. On May 5, 1937 she was given a permanent by John, who, to quote his competitor, "is a hairdresser of note and the best in the business". Despite his reputed proficiency, the permanent was unsatisfactory, and claimed by the plaintiff to have fallen far short of its intended purpose, that of curling and waving the hair. The defendant John, though not admitting the absence of curls or the failure of his efforts, and solely for the purpose of satisfying a good customer, agreed to give her a second permanent gratis, which she agreed to receive, and accordingly, on June 7, 1937, a second permanent was administered. It is the plaintiff's claim that too much heat was applied, that she was attached to a curling machine with another customer who required more heat than she did, and that these acts were primarily the cause of her troubles.

In support of her claims the plaintiff produces impressive experts who corroborate her testimony as to the condition of her hair after the second permanent, and who criticize the conduct of the defendant John. They say that two permanents in a little over a month is bound to do harm, that two customers should never be attached to one machine, and that there was not sufficient elasticity to the hair shafts (a lock of which was introduced in evidence) to stand a second permanent. They say the hair was dry, straw-like, split at the ends and without luster, all of which militate against the advisability of a permanent.

The defendants on the other hand produce even more impressive experts who say that the plaintiff's hair (using the lock in evidence to go by) had adequate elasticity to stand a

permanent, that frequently two customers are attached to one machine, and that two permanents in a little over a month, while not common, is not unheard of, depending upon the condition of the hair. Two witnesses who treated the plaintiff years ago say that the plaintiff's hair was always inclined to dryness and that she frequently received hot oil shampoos to alleviate that condition, and that the treatments she now claims to be receiving are no different from those given her from time to time over a period of years.

The defendant John says that he examined the hair carefully, that he believed it could stand another permanent, that he applied reduced heat, that he had completed most of the work before attaching her to the machine, that the machine only curled the hair about the neck, that the other customer on the machine required only two curls, and that she didn't need a second permanent anyway.

With this array of experts and their conflicting testimony, and with little or no personal knowledge of the subject, the Court has, indeed, found itself floundering, and has taken refuge in a careful analysis of the evidence, and in the application, thereto, of well-known legal principles.

The burden of proof is on the plaintiff. She must prove the material allegations of her complaint by a fair preponderance of the evidence. Let us analyze the evidence to determine whether she has succeeded in so doing.

It is generally conceded that no operator can guarantee the success of a permanent, regardless of his ability, skill, or painstaking efforts. Its success depends in part upon the physical and mental condition of the recipient, the quality and quantity of nutrition to the hair roots, and the condition and curlability of the hair shaft. If, therefore, an operator uses his best judgment and professional skill, he cannot be said to have been negligent simply because it later appears that he erred in judgment or diagnosed incorrectly.

It is a known fact that there is inherent danger to the hair in a permanent, and a woman who subjects herself to this treatment assumes the normal risk of the outcome in the absence of some positive act of negligence to which the failure or injury can be attributed. In the instant case the evidence does not justify a finding of negligence. The hair was carefully examined, reduced heat applied, and only the hair about the neck curled by machine. The result may indicate an error

in judgment on the part of the operator (and perhaps even the customer), but that cannot be stretched into negligence. A doctor, in applying his best professional skill, may err in the treatment of his patient, but no court has ever held him accountable for unfortunate results if it appeared that he exercised his best professional skill and yet diagnosed incorrectly to the detriment of his patient. To hold otherwise would impose an unreasonable burden upon the profession, with far-reaching effects. It would open the door to every disgruntled customer with resulting limitless abuses.

This does not mean that a hairdresser is relieved from the duty of using due care in the treatment of his patrons. It does not free him from negligent or unskillful acts. It merely leaves the burden of proving that negligence where the law says it now rests.

It is possible that after her last treatment the plaintiff's hair looked badly, and that the result obtained by John adds nothing to the glory of his profession. The Court, cannot, however, find that he acted negligently or that he did anything which a man of ordinary prudence, under the same circumstances, would not have done.

Judgment may be entered for the defendants to recover their costs.